HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. H. S. AND
W. H. RAMSEY.

Decided June 3, 1904.

**1.—Injury to Trespasser—Charge—Evidence.**

In an action for running down a trespasser on a trailway track, a requested instruction limiting the ground of liability to negligence after discovery of .his peril was erroneous in directing the jury to disregard the circumstance that the track was level and the view unobstructed, since such evidence bore on the question, when the trespasser was discovered, as well as when he might have been.

**2.—Injury to Trespasser—Discovered Peril—Charge.**

Instructions in case of a trespasser on a railway track riding a railway bicycle and run down by a rapidly moving train, which required of defendant "the greatest precaution" and the use of the "means and agencies" at hand to avoid injury after discovery of the peril, were erroneous and required qualification, where the evidence showed, as excuse for not reversing the engine, that it would have endangered the train and passengers.

Appeal from the District Court of Brazos. Tried below before Hon. J. C. Scott.

*Andrews & Ball* and *Henry L. Borden,* for appellant.

*Doremus & Butler* and *C. H. Steele,* for appellees.

GILL, ASSOCIATE JUSTICE.—This suit was brought by appellees to recover damages for the death of their son, John Ramsey, who was struck and killed by one of appellant's trains. A trial by jury resulted in a verdict and judgment for appellees of which the railroad company here complains.

In August, 1903, John Ramsey, the son of appellees, borrowed a railroad bicycle and was riding it on appellant's track in a southerly direction from College Station. From a section house south of College Station to and beyond the point of the accident, the track was straight and down grade. Appellant's passenger train which was due at College Station at 7 p. m. was a few minutes late and the engineer in charge was trying to make up the lost time. After it passed the section house its speed was unusually fast, the witnesses estimating it at from thirty-five to fifty miles an hour, the best estimate placing it at at least forty-five miles per hour. It overtook the bicycle within about 400 feet of the water tank, threw the wheel and its rider from the track and killed the rider.

Deceased was not an employe of appellant and had no right to be upon the track. The bicycle did not belong to appellant. The accident, occurred about 7:15 p. m. It was twilight and the headlight of the engine was lit.

From the section house to the water tank is about one mile. The testimony adduced by plaintiffs tended to show that the engine whistle began to blow the stock alarm about 1000 yards away from the point of the accident and that the train was actually stopped 300 feet beyond the

point of collision. A passenger on the train at the time testified that the whistle, began to sound about that distance from the point of collision and that the air brakes were applied about the same time, but he could perceive no immediate appreciable lessening of its speed. Others not in sight but in hearing testified that the alarm whistle sounded for a considerable time, one placing it as long as a full minute.

The substance of the engineer's statement was that he saw an object on the track ahead of the train and he immediately shut off his steam as a precautionary measure; that when in about 700 feet of the object he saw it was a man on a bicycle and immediately began sounding the whistle and applied the air brakes in the emergency; that on account of the down grade and the speed of the train he saw he would not be able to stop the train in time and that his only hope was to attract the man's attention by the whistle, which he continued to sound; that he did not reverse the engine drivers, not only because it would have lessened the effectiveness of the drive brakes, but because it would have probably burst the cylinder head and endangered the train and passengers. He stated positively that he did all he could to stop consistent with the safety of the train as soon as he saw that it was a man on the track, and that under the combined conditions of speed and down grade the train could not have been stopped in time to avert the accident. As to the distance within which such a train could have been stopped the evidence is conflicting.

The court held that deceased was a trespasser and submitted the issue of liability only on the theory of discovered peril.

Appellant requested the following special charge and complains because it was not given:

"The uncontradicted evidence in this case shows that at the time of the accident to John Ramsey, causing his death, that the said John Ramsey was a trespasser upon defendant's track and right of way. That is to say, he was upon the private property of defendant, at a point where he had no right, authority or privilege to be and at a place where the defendant's road was fenced for the purpose of preventing trespassing thereon; that the machine he was riding did not belong to the defendant, and that he was not in the pursuit of any business for the defendant. You are instructed therefore, as a matter of law, that the defendant, its servants and employes, owed the deceased no duty to keep a lookout for him in order to discover him, and the fact that the track might have been straight for a considerable distance to the north of the accident, and the fact, if it be true, that he could have been discovered long prior to the time that he was discovered, is of no importance in this case, and will not be considered by you in determining your verdict. You will consider, under the charge given you by the court, the questions there submitted, without regard to what might have happened if the engineer had discovered the deceased a long distance away; or if, having discovered him, the engineer could then have realized sooner than he did the peril of the deceased. What might have occurred prior to the

actual discovery of the peril of the deceased on the part of the engineer can not be considered by you in determining your verdict."

The charge as framed was properly refused. While it is true that the operatives of a railroad engine owe to the public generally the duty to keep a reasonable lookout, it can have no bearing on the issue of liability in this case because deceased's contributory negligence debars plaintiffs from taking advantage of such failure of duty. To that extent the charge requested may be said to be practically correct. But the charge goes further and takes from the consideration of the jury the straight track and the open view. This is not sound, for it was proper to consider it not only in determining the truth of the testimony of the engineer but as a circumstance tending to show a discovery of deceased and his peril in time to stop the train. That issue does not rest entirely in the conscience of the operatives of the engine but may be established by circumstances. The remainder of the charge is correct. If the peril was discovered too late to stop the train by the use of the means as above defined there can be no liability, however negligent they were in failing sooner to discover it or whatever the speed of the train. Texas P. Ry. Co. v. Staggs, 90 Texas, 458.

The court gave the following as a part of its general charge: "Where one is guilty of contributory negligence in going upon a railroad track the company may nevertheless be liable for an injury to him if after his peril is actually discovered the servants of the company fail to use the greatest precaution to avoid inflicting the injury, but this principle has no application in the absence of actual knowledge of the peril on the part of the person inflicting the injury in time to avoid injury by the means and agencies at hand."

This charge is complained of as misleading, as omitting the element of the safety of the train which it is the operatives' absolute duty to take into consideration.

We are of opinion the objection is well taken. One agency (reversing the engine) which is popularly supposed to be effective in stopping a train quickly, was not used. It was distinctly testified that its use would have been dangerous to the train. Under the charge quoted the jury might have concluded that the engineer should have abandoned every other consideration to the safety of deceased. They had been instructed that the operatives must use the "greatest precaution." Further on the court speaks of their duty to use the "means and agencies at hand," not mentioning the safety of the train. The error is repeated in another part of the charge where the duty to use the means and agencies at hand is mentioned, but the element of safety as to the train is omitted. In one part of the charge the court used the expression "consistent with safety." but does not distinctly apply it to the safety of the train.

It is true that in a special charge addressed primarily to other phases of the case the right rule is incidentally laid down, but we do not think the use of the expression "consistent with safety" in another por-

tion of the charge, or a correct instruction in a special charge, was sufficient to correct the error. We are aware that under some state of facts the error might be harmless, but upon this record we can not so hold.

Because of the necessity of another trial we do not pass upon the assignment questioning the sufficiency of the evidence to sustain the verdict as to liability. No other errors are presented.

For the reason given the judgment is reversed and the cause remanded.

*Reversed and remanded.*